**Donald L. Miller and Kenosha Auto Transport Corporation, a Corporation, Plaintiffs-Appellants, v. Gordon Botts, Defendant, and St. Paul Mercury Insurance Co., a Corporation, Garnishee-Defendant-Appellee.**

Gen. No. 66–5.

Second District.

December 29, 1966.

Eckert, Caldwell, Gleason & Berner, of Woodstock, for appellants.

Gates W. Clancy, of Geneva, for appellee.

MR. PRESIDING JUSTICE MORAN delivered the opinion of the court.

In December of 1958, the plaintiff Miller delivered an auto carrier owned by him to the defendant Gordon Botts

for repairs. The auto carrier was loaded with five new automobiles owned by the plaintiff Kenosha Auto Transport Corporation. While repairs were being made on December 13, 1958, with welding equipment, a fire started causing damages to plaintiffs' property.

Plaintiffs filed suit against Botts in the Circuit Court of McHenry County. Plaintiff Miller obtained judgment against Botts for Five Thousand One Hundred Thirty-five ($5,135) Dollars and costs and plaintiff Kenosha Auto obtained judgment against Botts for Four Thousand Nine Hundred Eighty-six and 72/100 ($4,986.72) Dollars.

Plaintiffs then filed a garnishment proceeding against the defendant St. Paul Mercury Insurance Co. to recover the judgments. St. Paul filed a general denial and a trial was held before the court without a jury. The trial court denied recovery against St. Paul finding that no contract of insurance existed. Plaintiffs appealed from this decision.

The evidence established that defendant Botts owned and operated Botts Welding and Truck Service in Woodstock, Illinois. In December of 1958 he had between 15 and 20 employees. He operated some nine trucks and he also operated a State of Illinois testing station for trucks and school buses.

Botts Welding Service carried 10 or 12 lines of insurance, including fire, garage keeper's liability, comprehensive liability, public liability, insurance on the stock of merchandise, testing station bond, employees' health and accident insurance and Workmen's Compensation insurance.

In prior years Botts had purchased his insurance from an agent named Heniken. However, early in 1958 Heniken sold his insurance business to Rardin-Phillips, Inc., and he introduced Mr. Phillips, of that firm, to Mr. Botts. Thereafter, the Rardin-Phillips agency handled all of

Botts' insurance except Workmen's Compensation and fire insurance on the building. In each case Phillips selected the insurance company and kept records of all expirations and renewals.

In February of 1958 defendant St. Paul entered into a written agency agreement with Rardin-Phillips, Inc., whereby that corporation was designated as agent of the St. Paul with "full power and authority to receive and accept proposals for insurance covering such classes of risks as the company may, from time to time, authorize to be insured."

On or about December 10, three days before the fire, Phillips went to see Botts. It would appear that there was a conversation and certain arrangements were made between Botts and Phillips. Although the exact conversation and arrangements are not clear it appears that Phillips knew Botts' Workmen's Compensation insurance with another company was expiring and that Botts wanted coverage. Phillips had received from St. Paul certain application forms and an instruction sheet for the processing of an application for a "multiple risk policy." Phillips testified that because he felt ill that day he went home and rather than filling in an application, he wrote a letter to St. Paul requesting that certain multiple coverage risks be bound for Botts. He testified that he then placed the letter in the mailbox in front of his home. It is not certain as to when this letter was picked up by the mailman although there was testimony that the postmark on the envelope was dated December 15, 1958. St. Paul never issued a "multiple risk policy" and has consistently denied coverage for the loss.

It is contended by the plaintiffs that there was a preliminary contract of insurance in force intended to protect defendant Botts pending investigation of the risk by St. Paul or until the policy could be properly issued and that the agent Phillips did have apparent,

implied or actual authority to bind St. Paul to the coverage.

The trial court held that under the circumstances, the conversation between Botts and Phillips could not be construed as an offer by Botts and an acceptance by Phillips, as agent for the St. Paul, that Phillips did not have apparent, implied or actual authority to bind St. Paul; and that until the risk was rated, the premium computed and Botts agreed to the premium, there could be no contract.

We have reviewed the abstract, additional abstract and the record pertaining to the conversation between Botts and Phillips. Botts' testimony is silent as to what was said in any conversation he had with Phillips on or about December 10. Phillips testified in an evidence deposition that he had stopped at the Botts Welding Shop and then went home since he was not feeling well; and that he had stopped by Botts' business establishment because the agency had received a notice of cancellation of a Workmen's Compensation policy. He testified that he told Botts he did not have enough fire insurance coverage and talked to Botts and his wife briefly about the multiple coverage policy. Phillips also testified that he took no money from Botts, that he had no idea what the insurance premium would be for multiple coverage policy, and that he did not mention any rate. He also testified that Botts did not commit himself to pay any premium.

It appears that the foregoing constitutes the only proof concerning the conversation between Botts and Phillips. There is no testimony that Botts asked that such coverage be bound or that Phillips offered to bind such coverage. There was apparently no testimony as to the amount of the premium or the nature or extent of limits of the coverage. This testimony falls far short of establishing an oral contract of preliminary insurance. See Pimentil v. Milo Brooke, Inc., 11 Ill App2d 201, 136 NE2d 608 (1956).

■ Further we feel that the finding by the trial court that Phillips did not have authority to issue an oral binder or a multiple coverage policy is not contrary to the manifest weight of the evidence. The agency was granted "full power and authority to receive and accept proposals for insurance covering such classes of risks as the company may, from time to time, authorize to be insured. . . ." However, the instruction sheet for the multiple coverage policy specifically states that "multiple coverage business may not be bound unless a quotation has been prepared in advance for the insured's review."

No quotation had been prepared in advance and under these circumstances the agency had no actual authority to bind the company to multiple coverage risk. The formal written appointment of Rardin-Phillips, Inc., as agent for St. Paul is limited by its own terms to such classes of risks as the company may from time to time authorize to be insured. The written instruction pertaining to the multiple coverage is consistent with the limited authority originally granted and does not further restrict the authority.

This was the second multiple coverage policy with which Phillips had experience and there was no proof that any attempt to issue a binder was made with regard to the first policy. There was no showing that Phillips ever discussed the St. Paul company with Botts, or exposed to or told him of the agency agreement issued by St. Paul. Further, there is no evidence that Botts ever obtained any type of insurance coverage issued by St. Paul through Phillips or any other agent prior to this.

■ Although under certain circumstances an agent may be clothed with apparent or implied authority to bind an insurer and the insurer may then be estopped from denying the agent's authority, Indemnity Ins. Co. of North America v. Midwest Transfer Co., 184 F2d 633; Boston Store of Chicago v. Hartford Accident & Indemnity Co., 227 Ill App 192; there must be some showing

of facts from which the apparent or implied authority to bind the insurance may be inferred.

In the absence of such showing in the case at bar, the trial court's finding that such authority did not exist is upheld.

Judgment affirmed.

DAVIS and ABRAHAMSON, JJ., concur.